UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
DEJAN RADMAN,

                       Plaintiff,

      -against-

ELC BEAUTY, LLC,

                       Defendant.
------------------------------------------------------------------X

**COMPLAINT**

**Docket No.: 20-cv-4017**

Jury Trial Demanded

DEJAN RADMAN ("Plaintiff"), by and through his attorneys, BORRELLI & ASSOCIATES, P.L.L.C., as and for his Complaint against ELC BEAUTY, LLC ("Defendant"), alleges upon knowledge as to himself and his own actions and upon information and belief as to all other matters as follows:

**NATURE OF CASE**

1. This is a civil action for damages and equitable relief based upon willful violations that the Defendant committed of Plaintiff's rights guaranteed to him by: (i) the overtime provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a); (ii) the overtime provisions of the New York Labor Law ("NYLL"), NYLL § 160; N.Y. Comp. Codes R. & Regs. ("NYCRR") tit. 12, § 142-2.2; (iii) the NYLL's requirement that employers furnish employees with wage statements containing specific categories of accurate information on each payday, NYLL § 195(3); (iv) the NYLL's requirement that employers furnish employees with a wage notice containing specific categories of accurate information upon hire, NYLL § 195(1); (v) one of the anti-retaliation provisions of the NYLL, NYLL § 215(1); and (vi) any other claim(s) that can be inferred from the facts set forth herein.

1

2. On February 5, 2020, Plaintiff and Defendant entered into a written agreement to toll the statute of limitations for all of Plaintiff's claims arising under, *inter alia*, the FLSA and the NYLL, from October 24, 2019 through April 15, 2020.  Plaintiff and Defendant subsequently entered into a successive tolling agreement, resulting in the tolling of the statute of limitations for these claims from October 24, 2019 through May 31, 2020.

3. Plaintiff worked for Defendant - - an affiliate of Estée Lauder Inc., an international beauty and cosmetics brand - - as a non-exempt retail boutique manager in one of Defendant's brick-and-mortar Manhattan stores, "By Kilian Cosmetics & Fragrances" - - which was previously owned and operated by By Kilian Retail New York LLC ("Kilian"), a limited liability company that dissolved as a result of its merger with Defendant - - from approximately August 1, 2011 until the end of his employment on August 16, 2019.

4. Throughout his employment, but as is relevant herein due to operation of the just-described tolling agreements, from on or about October 25, 2013 through the end of his employment on August 16, 2019 ("the Relevant Period"), Kilian and then Defendant willfully failed to pay Plaintiff the overtime wages lawfully due to him under the FLSA and the NYLL. Specifically, during the Relevant Period, first Kilian and then Defendant required Plaintiff to work, and Plaintiff did in fact work, in excess of forty hours during many weeks, yet Kilian and Defendant failed to pay Plaintiff at the rate of one and one-half times his regular rate of pay for any of the hours that he worked each week in excess of forty.  Instead, Kilian and then Defendant paid Plaintiff a flat salary solely intended to compensate him for his first forty hours plus commissions, and later at an hourly rate for up to forty hours of work each week plus sales commissions, and never anything for any hours beyond those first forty, despite Plaintiff never

supervising two or more full-time employees or their equivalent, and thereby at all times remaining entitled to receive overtime compensation.

5.Defendant further violated the NYLL by failing to provide Plaintiff with accurate wage statements on each payday or with any wage notice upon hire.

6.Making matters worse, after Plaintiff complained about Defendant requiring him to work "extra hours" without pay and about refusing to provide him with mandatory lunch breaks, Defendant retaliated by issuing Plaintiff written discipline and subsequently terminating Plaintiff's employment, in violation of the NYLL.

## JURISDICTION AND VENUE

7.The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises under 29 U.S.C. § 201, *et seq*. The supplemental jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1367 over all claims arising under New York law.

8.Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the actions or omissions giving rise to the claims for relief occurred within this judicial district.

## PARTIES

9.At all relevant times herein, Plaintiff worked for Defendant in New York, and was an "employee" entitled to protection as defined by the FLSA, the NYLL, and the NYCRR.

10.At all relevant times herein, Defendant was and is a limited liability company organized and existing under the laws of Delaware, with its principal place of business located at 767 Fifth Avenue, New York, New York 10153, and that is registered with the New York State Department of State to receive service of process at 80 State Street, Albany, New York 12207-2543.

11. Prior to working for Defendant, Plaintiff worked for non-party Kilian until Defendant acquired Kilian in 2016. Through Defendant's acquisition, Kilian merged its business into Defendant.

12. Defendant, as the successor-in-interest of Kilian, assumed liability for all debts, legal obligations, and claims against Kilian.

13. Defendant continued to employ Plaintiff and all other persons employed by Kilian in its Manhattan brick-and-mortar store at the time of the acquisition, and Defendant has continued and continues to provide what was previously Kilian's services to the public.

14. At all relevant times herein, Defendant was and is an "employer" within the meaning of the FLSA and the NYLL. Additionally, Defendant's qualifying annual business exceeded and exceeds $500,000, and Defendant was and is engaged in interstate commerce within the meaning of the FLSA as it employs two or more employees, and on a daily basis, sells products at retail stores such as makeup and fragrances that originate in countries outside of the United States and/or states other than New York, and accepts credit cards as a form of payment based on cardholder agreements with out-of-state companies, as well as cash that naturally moves across state lines, the combination of which subjects Defendant to the FLSA's overtime requirements as an enterprise with respect to all of its employees.

## BACKGROUND FACTS

15. Defendant is an affiliated entity of the international beauty, fragrance, and cosmetic company, Estee Lauder Inc.

16. In 2001, Plaintiff began working for an Estee Lauder Inc. affiliate, Darphan Paris. On or around August 1, 2011, Plaintiff began working for Kilian. In or around February 2016, Estee Lauder Inc. acquired Kilian, as well as all of its assets and liabilities, and Kilian was

gradually merged into the Estee Lauder Inc. umbrella through Defendant, with all of Kilian's management, personnel, and general business operations eventually taken over by Defendant. As the successor entity of Kilian, Defendant assumed liability for all debts, legal obligations, and claims against Kilian upon the completion of its acquisition and merger.

17. As part of that acquisition, Plaintiff formally began working for Defendant on or around July 1, 2016.

18. Plaintiff's primary job duties - - first for Kilian and later for Defendant - - consisted of, *inter alia*, working at Defendant's brick-and-mortar store located at 804 Washington Street in Manhattan. This required Plaintiff to sell merchandise, handle the cash register, assist customers, receive deliveries, administer the brand's social media presence, attend mandatory meetings and networking events, and report in-store issues to Defendant's corporate management.

19. Despite his title of "boutique manager" Plaintiff never supervised, managed, or directed the work of two or more full-time employees (or their equivalent part-time employees).

20. During the Relevant Period, Defendant required Plaintiff to work, and he did in fact work, at least five days per week, Tuesday through Saturday, from at least 11:00 a.m. until at least 7:00 p.m. often without an uninterrupted break. However, Plaintiff also frequently began working an average of fifteen to twenty minutes before the start of his scheduled shift, and also worked until as late as 9:00 p.m. either due to handling a busy shift, or as needed to administer the store's social media accounts. Further, at least one day each month when not otherwise scheduled to work, Plaintiff either: worked weekend shifts in the store of between five and nine hours; attended mandatory meetings, conference calls, or trainings of between two and five hours at Defendant's New York corporate offices located at 110 East 59th Street in Manhattan; or worked networking

events at other stores/businesses in Manhattan.  As a result, Plaintiff worked between forty-two and fifty-six hours per week, for an average of forty-eight and one-half hours per week.

21.     In exchange for his work, from the beginning of the Relevant Period and continuing until Defendant's acquisition of Kilian, Kilian paid Plaintiff a salary of $75,000.00 annually, plus a quarterly non-discretionary bonus of up to $5,000.00 each quarter tied to Plaintiff meeting defined sales numbers.

22.     Thereafter, upon its acquisition of Kilian in July 2016 and continuing through May 2019, Defendant converted Plaintiff from salaried to hourly and paid him at the rate of $41.22 per hour, plus commissions in the amount of 5% of his own sales, and 0.5% of the store's total sales. And finally, after May 2019 through the end of his employment on August 16, 2019, Defendant paid Plaintiff at the rate of $41.64 per hour plus the same commissions structure.

23.     At all times throughout the Relevant Period, however, first Kilian and then Defendant only paid Plaintiff either his salary for his first forty hours per week, or his hourly rate for up to forty hours per week, and paid him nothing for any hours that Plaintiff worked beyond his first forty in a week.  Thus, throughout the Relevant Period, first Kilian and then Defendant failed to pay Plaintiff at any rate of pay, let alone at his overtime rate of one and one-half times his regular hourly rate plus commissions, meaning at least $61.83 plus commissions until May 2019, and at least $62.46 plus commissions thereafter, for any hours that Plaintiff worked over forty in a week.

24.     By way of example only, during the week of July 8 through 14, 2019, Defendant required Plaintiff to work, and Plaintiff did in fact work, a total of 44.35 hours as follows:

> Monday, July 8, 2019: 10:45 a.m. until 7:14 p.m., with a twenty-eight-minute break;

>Tuesday, July 9, 2019: 10:41 a.m. until 7:51 p.m., with no break;
>
>Wednesday, July 10, 2019: off;
>
>Thursday, July 11, 2019: 10:51 a.m. until 7:02 p.m., with a twenty-eight-minute break;
>
>Friday, July 12, 2019: 1:30 p.m. until 7:15 p.m., with no break;
>
>Saturday, July 13, 2019: 10:45 a.m. until 7:05 p.m., with no break;
>
>Sunday, July 14, 2019: 11:47 a.m. until 6:05 p.m., with no break.

In exchange for his work this week, Defendant paid Plaintiff $41.64 per hour for only his first forty hours of work. Defendant paid Plaintiff nothing for his 4.35 hours worked beyond forty that week, much less his overtime rate of $62.46 per hour.

25. Defendant paid Plaintiff on a weekly basis.

26. On many occasions when Defendant paid Plaintiff, including for the specific week just described, Defendant failed to provide Plaintiff with a wage statement that accurately listed, *inter alia*, his actual hours worked per week or his actual overtime rate.

27. Defendant also did not provide Plaintiff with any wage notice at the time of his hire with it, i.e., when Plaintiff commenced his employment with Defendant following its acquisition of Kilian, let alone a notice that accurately listed, *inter alia*: Plaintiff's rate or rates of pay and basis thereof; whether he would be paid by the hour, salary, or in another manner; allowances, if any, claimed as part of the minimum wage, including tip or meal allowances; the regular payday designated by Defendant in accordance with the NYLL; the name of Defendant; any "doing business as" name used by Defendant; the physical address of Defendant's main office or principal place of business, and mailing addresses if different; and Defendant's telephone number.

28. Each hour that Plaintiff worked during at least the Relevant Period was first for Kilian's and then Defendant's benefit.

29. Kilian and Defendant acted in the manner described herein so as to minimize their labor costs and overhead while maximizing their profits.

30. Making matters worse, after Plaintiff complained to Defendant about Defendant failing to compensate him for all of his hours worked, and for often refusing to allow Plaintiff to take any breaks during his workday - - as was the case during, e.g., four of the six days he worked in the example week listed above - - Defendant retaliated by first issuing Plaintiff a written warning, and then ultimately terminating his employment.

31. Specifically, beginning in early March 2019, Plaintiff complained to Defendant via Mandie Cantrill, Head of Sales for the United States, Nancy Hastings, Vice President of Sales for the United States, and Joril Westwood, Regional Sales Manager, that he was not compensated for "extra hours" and that he was often denied breaks throughout the workday, specifically requesting a meeting with Defendant's human resources staff on or around March 12, 2019, to address his concerns and to request permission to close the store when no other employees were working to allow him to take a thirty-minute break.  In response, on March 14, 2019, Plaintiff met with Westwood at the store.  Much to Plaintiff's chagrin, instead of addressing his concerns, Westwood issued Plaintiff a disciplinary "written warning" during that March 14, 2019 meeting, identifying over seventy instances of alleged "tardiness" dating back to August 31, 2018.

32. After receiving the "written warning," Plaintiff complained to Defendant through at least: Cantrill; Hastings; Westwood; Cinzia Bernasconi, Estee Lauder's Fragrance General Manager; and Kilian Hennessy, "By Kilian" founder - - all via email and on multiple occasions from March 22, 2019 through at least June 4, 2019 - - specifically citing his request to obtain "door

signage" to allow him to close the store for his breaks, questioning "disciplinary actions towards [him] for something that was not addressed or was a concern prior," pointing out that Defendant's own written employee handbook mandated lunch breaks for shifts exceeding six hours, and complaining about Defendant "paying no attention to extra hours" that Plaintiff had and continued to work without pay.  On June 4, 2019, Defendant provided Plaintiff with a sign to place on the store's front door, stating "back in thirty minutes," allowing him to take a lunch break, in theory.

33. But on June 11, 2019, despite acknowledging the need for Plaintiff to take his breaks by providing him with the front door sign only one week earlier, Defendant issued Plaintiff another disciplinary "written warning," this time styled as a "final warning," again claiming unfounded issues relating to tardiness that were unfounded, as Plaintiff had at all times reported for his shifts as scheduled.  Defendant, through Human Resources Director Scott Mayhugh, affirmatively represented to Plaintiff that if he had no further issues after thirty days, it would remove the "warning" and he could proceed without any problems.

34. But in practice, Plaintiff was still often unable to take a break because he spent many shifts working in the store alone and there was never more than one other employee in the store in addition to Plaintiff, meaning that during busy shifts, a lunch break was not possible. Regardless, on August 15, 2019, Plaintiff followed up with Mayhugh, Defendant's Human Resources Director, regarding Mayhugh's previous statement that after thirty days, the "warning" would be removed.  The very next day, on August 16, 2019, Defendant terminated Plaintiff's employment, citing alleged "time fraud" that Defendant accused Plaintiff of committing nearly one month earlier on July 20, 2019, despite never previously addressing this with Plaintiff.

**FIRST CLAIM FOR RELIEF AGAINST DEFENDANT**
*Unpaid Overtime Under the FLSA*

35. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

36. 29 U.S.C. § 207(a) requires employers to compensate their employees at a rate not less than one and one-half times their regular rates of pay for all hours worked exceeding forty in a workweek.

37. As described above, Defendant is an employer within the meaning of the FLSA, while Plaintiff is an employee within the meaning of the FLSA.

38. As also described above, Plaintiff worked in excess of forty hours in a workweek, yet Defendant failed to compensate him in accordance with the FLSA's overtime provisions.

39. Defendant willfully violated the FLSA.

40. Plaintiff is entitled to overtime pay for all hours worked per week in excess of forty at the rate of one and one-half times his regular rate of pay, inclusive of commissions.

41. Plaintiff is also entitled to liquidated damages and attorneys' fees for Defendant's violations of the FLSA's overtime provisions.

**SECOND CLAIM FOR RELIEF AGAINST DEFENDANT**
*Unpaid Overtime Under the NYLL and the NYCRR*

42. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

43. NYLL § 160 and 12 NYCRR § 142-2.2 require employers to compensate their employees at a rate not less than one and one-half times their regular rates of pay for all hours worked exceeding forty in a workweek.

44. As described above, Defendant is an employer within the meaning of the NYLL and the NYCRR, while Plaintiff is an employee within the meaning of the NYLL and the NYCRR.

45. As also described above, Plaintiff worked in excess of forty hours in a workweek, yet Defendant failed to compensate him in accordance with the NYLL's and the NYCRR's overtime provisions.

46. Plaintiff is entitled to overtime pay for all hours worked per week in excess of forty at the rate of one and one-half times his regular rate of pay, inclusive of commissions.

47. Plaintiff is also entitled to liquidated damages, interest, and attorneys' fees for Defendant's violations of the NYLL's and the NYCRR's overtime provisions.

### THIRD CLAIM FOR RELIEF AGAINST DEFENDANT
*Failure to Furnish Proper Wage Statements in Violation of the NYLL*

48. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

49. NYLL § 195(3) requires that employers furnish employees with wage statements containing accurate, specifically enumerated criteria on each occasion when the employer pays wages to the employee.

50. As described above, Defendant is an employer within the meaning of the NYLL, while Plaintiff is an employee within the meaning of the NYLL.

51. As also described above, Defendant failed to furnish Plaintiff, on each payday, with a wage statement that accurately contained all of the criteria that the NYLL requires.

52. Prior to February 27, 2015, pursuant to N.Y. Lab. Law § 198(1-d), Defendant is liable to Plaintiff in the amount of $100.00 for each workweek that the violation occurred, up to a statutory cap of $2,500.00.

53. On or after February 27, 2015, pursuant to NYLL § 198(1-d), Defendant is liable to Plaintiff in the amount of $250.00 for each workday that the violation occurred, up to a statutory cap of $5,000.00.

## FOURTH CLAIM FOR RELIEF AGAINST DEFENDANT
*Failure to Furnish Proper Wage Notice in Violation of the NYLL*

54. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

55. NYLL § 195(1) requires that employers provide employees with a wage notice at the time of hire containing accurate, specifically enumerated criteria.

56. As described above, Defendant is an employer within the meaning of the NYLL, while Plaintiff is an employee within the meaning of the NYLL.

57. As also described above, Defendant failed to provide Plaintiff with any wage notice at hire, let alone one that accurately contained all of the criteria that the NYLL requires.

58. Pursuant to NYLL § 198(1-b), Defendant is liable to Plaintiff in the amount of $50.00 for each workday after the violation occurred, up to a statutory cap of $5,000.00.

## FIFTH CLAIM FOR RELIEF AGAINST DEFENDANT
*Retaliation Under the NYLL*

59. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

60. NYLL § 215(1)(a) provides that "[n]o employer or his or her agent, or the officer or agent of any corporation . . . shall discharge, threaten, penalize, or in any other manner discriminate or retaliate against an employee (i) because such employee has made a complaint to his or her employer . . . that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of this chapter."

61. As described above, after Plaintiff engaged in activity protected under the NYLL, Defendant retaliated by issuing Plaintiff written discipline and subsequently terminating Plaintiff's employment.

62. As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of the NYLL, Plaintiff has suffered, and continues to suffer, economic loss, for which he is entitled to an award of monetary damages, liquidated damages, and other relief.

63. As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of the NYLL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of career fulfillment, loss of self-esteem and self-confidence, and emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief

64. Pursuant to NYLL § 215(2)(b), contemporaneous with the filing of this Complaint, Plaintiff is serving a Notice of Claim on the Office of the New York State Attorney General, thereby advising the aforementioned of his claim for retaliation under Section 215 of the NYLL.

## DEMAND FOR A JURY TRIAL

65. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all claims in this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demand judgment against Defendant as follows:

a. A judgment declaring that the practices complained of herein are unlawful and in willful violation of the aforementioned United States and New York State laws;

b. An order restraining Defendant from any retaliation against Plaintiff for participation in any form of this litigation;

c.      An award of all damages that Plaintiff has sustained as a result of Defendant's conduct, including all unpaid wages and any shortfall between wages paid and those due under the law that Plaintiff would have received but for Defendant's unlawful payment practices;

d.      An award of liquidated damages and any other statutory penalties as recoverable under the FLSA and the NYLL;

e.      Granting Plaintiff all economic damages that he has sustained as a result of Defendant's retaliatory conduct, including general and special damages for past and future lost compensation and benefits that he would have received but for Defendant's conduct;

f.      Granting an award of damages to be determined at trial to compensate Plaintiff for emotional distress and/or mental anguish in connection with his claims;

g.      Granting an award of damages to be determined at trial to compensate Plaintiff for harm to his professional and personal reputations and loss of career fulfillment in connection with his claims;

h.      Awarding Plaintiff his reasonable attorneys' fees, as well as all costs and disbursements incurred in connection with this action, including expert witness fees and other costs and expenses;

i.      Granting an award of punitive damages, to the extent permitted by law, commensurate with Defendant's ability to pay;

j.      Awarding pre-judgment and post-judgment interest, as provided by law; and

  k. Granting Plaintiff such other and further relief as this Court finds necessary and proper.

Dated: New York, New York
   May 22, 2020

                Respectfully submitted,

                BORRELLI & ASSOCIATES, P.L.L.C.
                *Attorneys for Plaintiff*
                655 Third Avenue, Suite 1821
                New York, New York 10017
                Tel. (212) 679-5000
                Fax. (212) 679-5005

         By: _____
                MICHAEL R. MINKOFF (MM 4787)
                ALEXANDER T. COLEMAN (AC 1717)
                MICHAEL J. BORRELLI (MB 8533)